| | | |
|---|---|---|
| TYRON HAMMOND, | : | |
| Petitioner, | : | CIVIL CASE NO. |
| | : | 3:16-CV-00620 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MAY 24, 2018 |
| Respondent. | : | |
| | : | |

## RULING RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (DOC. NO. 1)

## I. INTRODUCTION

The petitioner, Tyron Hammond ("Hammond"), filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to section 2255 of title 28 of the United States Code on April 20, 2016. See Mot. to Vacate, Set Aside or Correct Sentence ("Mot. to Vacate") (Doc. No. 1). On April 29, 2016, Hammond filed a Motion to Amend/Correct his Petition by adding two further grounds for relief. See Motion to Amend/Correct Mot. to Vacate, Set Aside or Correct Sentence ("Mot. to Amend") (Doc. No. 4). The respondent, the United States of America ("the government"), submitted a Response to Hammond's Petition and his Motion to Amend on June 20, 2016 ("Gov't's Resp.") (Doc. No. 7) and a Corrected Response on June 22, 2016 (Gov't's Corrected Resp.") (Doc. No. 8). The court later granted Hammond's Motion to Amend. See Order (Doc. No. 17).

On June 25, 2016, Attorney Charles Willson filed an appearance on behalf of Hammond to pursue arguments arising out of Johnson v. United States, 135 S Ct. 2552 (2015). (Doc. Nos. 9, 12). After supplemental briefing regarding Hammond's Johnson claim (Doc. Nos. 15, 16, 18), Hammond withdrew his Johnson claim on May 15, 2017,

following the Supreme Court's decision in <u>Beckles v. United States</u>, 137 S. Ct. 886

(2017).  <u>See</u> Resp. to OTSC (Doc. No. 22).  Attorney Willson terminated his

representation of Hammond following the withdrawal of Hammond's <u>Johnson</u> claim.

(Doc. No. 23).

The court set an initial deadline of July 17, 2017, for Hammond to file a Reply

brief (Doc. No. 23).  When that deadline passed without Hammond having submitted a

Reply, the court extended the deadline to September 1, 2017.  (Doc. No. 25).  On

October 13, 2017, the court issued an Order to Show Cause stating that it would rule on

Hammond's Petition on the papers submitted to date if Hammond did not submit his

Reply by November 3, 2017.  (Doc. No. 26).  Hammond never filed a Reply.

For the reasons set forth below, Hammond's Motion to Vacate is **DENIED**.

## II.  BACKGROUND

Hammond was indicted on February 26, 2013, for unlawful possession of

ammunition by a convicted felon, in violation of sections 922(g)(1) and 924(a)(2) of title

18 of the United States Code.  <u>See</u> <u>U.S. v. Hammond</u>, No. 3:13-CR-43 (JCH)

("Hammond Criminal Docket"), Indictment (Doc. No. 1).  Hammond was initially

represented by Attorney Robert Golger.  <u>See</u> Hammond Criminal Docket, Att'y

Appearance (Doc. No. 6).  Attorney Golger withdrew on May 23, 2013, <u>see</u> Hammond

Criminal Docket, First Mot. to Withdraw (Doc. No. 37), and was replaced by Attorney J.

Patten Brown, <u>see</u> Hammond Criminal Docket, Appointment of Att'y (Doc. No. 39).

Trial began on August 27, 2013, and the jury returned a guilty verdict the

following day.  <u>See</u> Hammond Criminal Docket, Jury Verdict (Doc. No. 82).  On

December 9, 2013, this court sentenced Hammond to 108 months' imprisonment and

three years of supervised release.  <u>See</u> Hammond Criminal Docket, Judgment (Doc.

No. 103).  Hammond appealed his conviction and sentence, and the Second Circuit

denied his appeal on January 23, 2015.  <u>See</u> <u>U.S. v. Hammond</u>, 590 F. App'x 107 (2d

Cir. 2015).

In the pending Motion to Vacate, supplemented by Hammond's Motion to

Amend, Hammond requests an evidentiary hearing pursuant to section 2255 on nine

grounds.[1]  <u>See</u> Mot. to Vacate at 13.

## III. LEGAL STANDARDS

A.    <u>Section 2255 Petition</u>

"Because collateral challenges are in tension with society's strong interest in the

finality of criminal convictions, the courts have established rules that make it more

difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."

<u>Yick Man Mui v. United States</u>, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks

omitted).  Section 2255 of title 28 of the United States Code permits a federal prisoner

to move to vacate, set aside, or correct his sentence "upon the ground that the sentence

was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in

excess of the maximum authorized by law, or is otherwise subject to collateral attack."

28 U.S.C. § 2255(a) (2016).  Therefore, relief is available "under § 2255 only for a

constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that

constitutes a fundamental defect which inherently results in a complete miscarriage of

---

[1] Hammond initially brought ten claims, but has withdrawn his <u>Johnson</u> claim.  <u>See</u> Resp. to
OTSC (Doc. No. 22).

justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

The petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence. See Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011). In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the plaintiff is entitled to no relief." 28 U.S.C. § 2255(b). However, a petitioner is not automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). To determine whether a prisoner is entitled to an evidentiary hearing on the motion, the court looks "primarily to the affidavit or other evidence proffered in support of the application in order to determine whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir.2005) (quoting Dalli v. United States, 491 F.2d 758, 760 (2d Cir.1974)). "The petitioner must set forth specific facts which he is in a position to establish by competent evidence." Id. (quoting Dalli, 491 F.2d at 761).

B.    Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel must satisfy a two-prong test under Strickland v. Washington, 466 U.S. 668, 687–88 (1984). First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688; see also United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008). Second, he must show that he was actually prejudiced as a result of counsel's

deficient performance.  See Strickland, 466 U.S. at 687, 692; see also Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012).

Under the first prong, the petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); see also Gjuraj v. United States, No. 3:12-CV-1686, 2013 WL 3540986, at *4 (D. Conn. July 10, 2013).  The Second Circuit has described the petitioner's burden as "a heavy one because, at the first step of the analysis, [a court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Harrington, 689 F.3d at 129 (quoting Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011)).  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  Kimmelman, 477 U.S. at 381.

Under the second prong, to show prejudice, a petitioner must establish "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694; see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).  Strickland defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  As such, prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.

## IV. DISCUSSION

A.     Ground Two: Definition of Ammunition[2]

Hammond claims that the jury was required to find that the "ammunition the movant is being accused of possessing was capable to expel a projectile, (the bullet), by the action of an explosive, (the gunpowder)," but the court did not instruct the jury on this element and there was no evidence that the bullets contained gunpowder that would allow them to expel a projectile by the action of an explosive. See Mot. to Vacate at 15–16. Due to the lack of a complete definition of ammunition in the Indictment and jury instructions, Hammond argues, the court did not have jurisdiction over his case. See id. at 14–16. Hammond argues that, because a jurisdictional issue is never waived, he is not barred from seeking reversal of his conviction on this ground. See id. at 15. In addition, he argues, under Alleyne v. United States, 570 U.S. 99 (2013), ammunition was an element that increased the penalty he faced and had to be submitted to the jury. Finally, Hammond argues, Attorney Brown, who served as his trial and appellate counsel, was ineffective for failing to challenge the Indictment and conviction on this basis. See id. at 16.

The government responds that Hammond is procedurally barred from raising his claim because he did not raise it on direct appeal. See Gov't Corrected Resp. at 20–21. The government also argues that, even assuming Alleyne applied to Hammond's claim, the Second Circuit has held that Alleyne may not be applied retroactively on collateral review. See id. at 21. Additionally, the government argues that Hammond's

---

[2] Hammond's withdrawn Johnson claim was labeled "Ground One." The court will use Hammond's original numbering for ease of reference.

trial and appellate counsel was not ineffective because the count of unlawful possession of ammunition which traveled in interstate commerce was properly charged and proven to the jury. See id.

The court concludes that Hammond procedurally defaulted his claim that there was insufficient evidence to support his conviction for unlawfully possessing ammunition by failing to raise it on direct appeal. See Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). Hammond's characterization of the elements of the offense as "jurisdictional" does not allow him to circumvent the procedural default bar. See id. In addition, even assuming Alleyne applied to Hammond's claim, the Second Circuit has held that Alleyne may not be applied retroactively on collateral review. See United States v. Redd, 735 F.3d 88, 91–92 (2d Cir. 2013).

Hammond also challenges his conviction on the basis of ineffective assistance of counsel, see Mot. to Vacate at 14–16, but he has not plausibly alleged that trial or appellate counsel was ineffective in failing to challenge the Indictment or conviction based on the definition of the term ammunition. In his Petition, Hammond provides the statutory definition for firearm and argues that the court failed to instruct the jury to consider whether Hammond possessed gunpowder. See Mot. to Vacate at 15. However, Hammond was charged with unlawful possession of ammunition, not of a firearm. See Indictment (charging Hammond with "knowingly posess[ing] ammunition . . . namely, eight rounds of Cascade Cartridge, Inc. .22 caliber ammunition, which had been shipped and transported in interstate commerce, and which were loaded in a J.C. Higgins .22 caliber revolver bearing serial number 1258943.") The court properly instructed the jury: "The second element which the government must prove beyond a

reasonable doubt is that, on or about December 11, 2012, the defendant knowingly possessed ammunition. Ammunition is defined as or means ammunition or cartridge cases, primers, bullets or propellants that are designed for use any [sic] firearm." Hammond Criminal Docket, Transcript Day 2 ("Day 2 Tr.") (Doc. No. 111) at 424. This jury instruction was in accordance with the statutory definition of ammunition. See 18 U.S.C. § 921(a)(17)(A) ("The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm.")

Thus, Hammond's claim of ineffective assistance of counsel with respect to the purported gap in the government's proof of his possession of ammunition and the allegedly incomplete jury instruction is denied.

B. Ground Three: Proof of the Interstate Commerce Element

Hammond argues that the government failed to prove that the ammunition he was charged with possessing had traveled in interstate commerce and that his counsel was ineffective for failing to object. See Mot. to Vacate at 16–18. He argues that the government expert, Steve Rogers ("Rogers"), only testified that the cartridge cases traveled in interstate commerce, not that the cartridge cases were capable of expelling a projectile due to gunpowder that had traveled in interstate commerce. See id. at 16–17. By focusing only on the provenance of the cartridges and not the gunpowder that made the ammunition live, Hammond argues, the government did not meet the required jurisdictional element. See id. at 17. In addition, Hammond argues that the age of the cartridges is a required element. See id. at 18.

The government responds that Hammond is procedurally barred from raising his claim regarding the interstate commerce element in his section 2255 Petition because

8

he did not raise it on direct appeal.  See Gov't's Corrected Resp. at 22.  The government also argues that Hammond has not plausibly alleged that trial counsel was ineffective given trial counsel's cross-examination of Rogers, who testified that the ammunition Hammond possessed was manufactured in Idaho.  See id. at 22–23.

The court concludes that Hammond waived his claim that there was insufficient evidence in support of the interstate commerce element of the offense for which he was convicted by not raising it on direct appeal and is therefore procedurally barred from raising it in a collateral challenge.  See Zhang, 506 F.3d at 166.

Hammond also challenges his conviction on the ground of ineffective assistance of counsel, see Mot. to Vacate at 16–18, but he has not plausibly alleged that trial or appellate counsel was ineffective for failing to expose an alleged lack of proof for the interstate commerce element of the offense at trial or on direct appeal.  At trial, Rogers testified that the eight rounds of ammunition loaded into the firearm recovered from Hammond's bedroom contained a head-stamp indicating that it was manufactured in Idaho.  See Hammond Criminal Docket, Transcript Day 1 ("Day 1 Tr.") (Doc. No. 112) at 300.  Rogers also testified that the ammunition was capable of being fired because it contained live primer mix and a propellent inside the cartridge case.  See id.  On cross-examination, Hammond's counsel questioned Rogers about whether it was possible that someone had remade the rounds of ammunition using the Idaho cartridges.  See Hammond Criminal Docket, Day 1 Tr. at 302.  Trial counsel's cross-examination of Rogers appears to have been an effort to advance the very same argument Hammond now presses in his Petition: that only the cartridge case could be definitively traced to

Idaho.[3]  However, Mr. Rogers testified that the ammunition could not be reloaded.  <u>See</u>
<u>id.</u>

Thus, the court concludes that Hammond has not plausibly alleged that trial or
appellate counsel was objectively unreasonable for failing to object at trial or pursue a
direct appeal of the sufficiency of proof for the interstate commerce element.  <u>See</u>
<u>Dunham v. Travis</u>, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about whether to
engage in cross-examination, and if so to what extent and in what manner, are . . .
strategic in nature and generally will not support an ineffective assistance claim.")
(citation and internal quotation marks omitted).

Trial counsel also established through cross-examination that Rogers did not
know when the ammunition was manufactured and that his company had been
manufacturing that particular round for over 40 years.  <u>See</u> <u>id.</u> at 303.  However, on re-
direct, Rogers testified that at no time during those 40 years has the type of ammunition
found in Hammond's possession been manufactured in Connecticut.  <u>See</u> <u>id.</u> at 304.
Even if trial counsel had not sought to exploit the same point that Hammond now makes
in his Petition, Hammond's claim fails because there is no requirement regarding how
recently the ammunition must have crossed state lines.  <u>See</u> <u>U.S. v. Sanders</u>, 35 F.3d
61, 62 (2d Cir. 1994) (upholding conviction under section 922(g)(1) based on evidence

---

[3] Even if the jury had determined that it could only find beyond a reasonable doubt that the
cartridges alone had traveled in interstate trial, the interstate commerce element would have been
satisfied.  <u>See</u> <u>U.S. v. Danielson</u>, 199 F.3d 666, 670 (2d Cir. 1999) ("The essential element of the offense
charged was that Danielson possessed ammunition that had traveled in interstate commerce, not the
precise nature of that ammunition."); <u>see also</u>, 18 U.S.C. § 921(a)(17)(A) ("The term 'ammunition' means
ammunition <u>or</u> <u>cartridge</u> <u>cases</u>, primers, bullets, or propellent powder designed for use in any firearm.")
(emphasis added).

that ammunition had traveled in interstate commerce "at some unspecified time prior to [defendant's] possession of it").

    C.    <u>Ground Four: Summation Misconduct</u>

Hammond argues that the government engaged in prosecutorial misconduct during its summation by describing Rogers's testimony that the ammunition Hammond possessed was live and capable of being fired from the firearm. <u>See</u> Mot. to Vacate at 18–19. Hammond argues that the government's account of Rogers's testimony was false. <u>See</u> <u>id.</u> at 18. He also argues that trial and appellate counsel was ineffective for not objecting or raising this claim on direct appeal. <u>See</u> <u>id.</u> at 18–19.

The government responds that Hammond's claim of prosecutorial misconduct is procedurally barred from being challenged on collateral review because it was not objected to at trial or pursued on direct appeal. <u>See</u> Gov't's Corrected Resp. at 24. The government also argues that the challenged statement was not factually incorrect or improper vouching for a witness, but an accurate restatement of the evidence. <u>See</u> <u>id.</u>

Hammond's claim of prosecutorial misconduct is procedurally barred. <u>See</u> <u>Zhang</u>, 506 F.3d at 166. In addition, Rogers in fact testified that the ammunition was live and capable of being fired from any .22 caliber firearm. <u>See</u> Day 1 Tr. at 300. Given that the government's description of Rogers's testimony was an accurate statement of the evidence, Hammond has not plausibly alleged that trial counsel was ineffective for declining to object to the government's summation.

    D.    <u>Ground Five: Confrontation Clause</u>

Hammond argues that his right to confront witnesses against him was violated by the government's reference to Rogers's testimony in its summation. <u>See</u> Mot. to Vacate

at 19.  Hammond also argues that his trial and appellate counsel was ineffective for failing to object to and appeal the government's alleged summation misconduct.  See id. The government responds that trial counsel exercised Hammond's right to cross-examine Rogers and another government witness, Sergeant Joshua Armistead ("Armistead"), who testified regarding Hammond's possession of the ammunition, and therefore there was no Sixth Amendment violation.  See Gov't's Corrected Resp. at 24.

The Sixth Amendment's Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  See Crawford v. Washington, 541 U.S. 36, 53–54 (2004).  Hammond exercised his right to cross-examine Rogers at trial.  See Hammond Criminal Docket, Day 1 Tr. at 302.  Before the jury began its deliberation, the court gave the instruction: "the closing arguments are not evidence. . . .  your recollection of what you heard in the courtroom yesterday is what the evidence is."  Hammond Criminal Docket, Day 2 Tr. at 375.  Thus, the court concludes that Hammond has not plausibly alleged that trial or appellate counsel was ineffective for not raising an objection or appeal under the Sixth Amendment.

E.    Grounds Six and Seven: DNA Evidence

Hammond argues that his attorney's failure to retain a DNA expert constituted ineffective assistance of counsel.  See Mot. to Vacate 20.  Hammond also argues that trial counsel was ineffective for failing to introduce into evidence a report filed by Sergeant Armistead and for failing to cross-examine Sergeant Armistead on that report. See id.  Hammond states that he learned of the report through trial counsel, who had

informed him that the report did not show Hammond's DNA on the ammunition.  See id.

In addition, Hammond argues that trial counsel was ineffective for failing to follow up

with counsel for another criminal defendant, Shawn Hill ("Hill"), whose DNA expert had

purportedly discovered that the DNA testing conducted by the forensic examiner from

the State of Connecticut's Division of Scientific Services, Michael Morganti ("Morganti"),

was improper.  See id. at 21.

The government argues that trial counsel's decision not to retain a DNA expert

was not objectively unreasonable and that Hammond has not shown prejudice resulting

from trial counsel's choice.  See Gov't's Corrected Resp. at 25.  In response to

Hammond's claim that trial counsel failed to follow up with Hill's DNA expert, the

government attaches to its Corrected Response an Affidavit from trial counsel stating

that he spoke to Hill's attorney and reviewed some of the DNA evidence in Hill's case

before deciding that it would not be helpful or relevant to Hammond's case.  See id., Ex.

4, ¶ 4.

At trial, Sergeant Armistead testified that he swabbed the firearm and cartridges

to collect DNA samples and then sent the samples to a laboratory for processing.  See

Hammond Criminal Docket, Day 1 Tr. at 280–81, 283–85.  During cross-examination,

Sergeant Armistead testified that he did not conduct the DNA testing himself.  See

Hammond Criminal Docket, Day 1 Tr. at 290.  Given Sergeant Armistead's testimony

and the fact that Hammond has not alleged a basis for his belief that Sergeant

Armistead's report concerned DNA analysis other than Hammond's discussion with trial

counsel, Hammond has not plausibly alleged that trial counsel was ineffective for failing to challenge the DNA evidence using Sergeant Armistead's report.[4]

In addition, the court concludes that Hammond has not plausibly alleged that trial counsel was ineffective for deciding not to introduce a DNA expert. "The decision not to call a particular witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (alterations and citation omitted). "Strickland does not enact Newton's third law for presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." Harrington v. Richter, 562 U.S. 86, 111 (2011). Often "cross-examination will be sufficient to expose defects in an expert's presentation." Id.

Morganti testified that Hammond was identified as a contributor to the mixture of DNA found on the cartridges and the revolver. See Hammond Criminal Docket, Day 1 Tr. at 343–45. Through cross-examination, see id. at 347–52, 355–56, and in summation, see Day 2 Tr. at 383–84, trial counsel suggested that Hammond's DNA was placed on the cartridges through cross-contamination. Hammond has not plausibly alleged that trial counsel was ineffective for determining that his strategy would be to challenge the government expert's methodology rather than retaining a defense expert. See Richter, 562 U.S. at 111.

Hammond also argues that trial counsel was ineffective for not following up on Hammond's request to contact Hill's attorney. See Mot. to Vacate at 21. Hammond

---

[4] While Sergeant Armistead testified that he was not responsible for testing for DNA, he stated that he examined the firearm and ammunition for fingerprints, but did not recover any. See Hammond Criminal Docket, Day 1 Tr. at 282. It is possible that Hammond is either referring to Armistead's report regarding the absence of fingerprints, as opposed to DNA, or that there was a miscommunication between trial counsel and Hammond regarding the substance of Sergeant Armistead's report.

states that Hill's DNA expert had reexamined the firearm that Hill was arrested for possessing and discovered that Morganti's DNA testing was not properly conducted. See id. However, in his Affidavit, trial counsel states that, after Hammond brought the DNA evidence in Hill's case to his attention, he contacted Hill's attorney and reviewed some evidence related to that DNA claim, which involved a different firearm. See Gov't's Corrected Resp., Ex. 4 ¶ 4. Trial counsel states, "I recall deciding that it was not going to be helpful or even relevant to our case." Id.

The court concludes that it was not objectively unreasonable for trial counsel to decline to introduce the report prepared by Hill's expert. In fact, although Hammond was not charged with possessing the firearm involved in Hill's case, there was evidence that firearm contained Hammond's DNA. See Gov't's Corrected Resp. at 26. The court will not second-guess trial counsel's strategic decision not to introduce evidence of questionable relevance that could have been prejudicial to his client.

Moreover, following a Daubert hearing, Judge Chatigny denied Hill's motion to exclude the DNA evidence in his case. U.S. v. Hill, No. 3:13-CR-46 (RNC), Minute Entry (Doc. No. 159). There is not a reasonable probability that the report Hammond asked trial counsel to obtain, which failed to cast doubt on the DNA evidence in Hill's own case, would have led to a different result in Hammond's trial, which was based on DNA samples from a different firearm. Thus, Hammond has also failed to meet the prejudice prong of Strickland.

F.     Ground Eight: Conveyance of Plea Offer

Hammond claims that trial counsel was ineffective for failing to convey the government's plea offer to him and that he would have accepted the plea offer had he

known of it.  See Mot. to Vacate at 22.  The government responds by submitting affidavits from Hammond's two defense attorneys, plea letters the government conveyed to Hammond's attorneys, and letters from Hammond's attorneys to Hammond.  See Gov't's Corrected Resp., Exs. 4–10.  In addition, the government argues, the draft plea letters it sent to Hammond's attorneys included a reduction for acceptance of responsibility, but contained the same base offense level that the court subsequently adopted at sentencing.  See Gov't's Corrected Resp. at 30.  Because Hammond was charged in a one-count indictment with no lesser-included offense or alternative charge, the government argues, it is unclear what plea offer Hammond could be referring to apart from the two draft plea letters attached as exhibits that were conveyed to Hammond.  See id.  The government also argues that, even assuming there was a plea offer that was extended but not conveyed to Hammond, of which neither Hammond's attorneys nor the government are aware, Hammond cannot establish prejudice because his continued assertion of his innocence undermines his claim that he would have pled guilty.  See id. at 29–30.

Attorney Golger, who represented Hammond from March 12, 2013 until May 23, 2013, stated in his Affidavit that he received two proposed plea letters from the government, both of which he conveyed to Hammond.  See Gov't's Corrected Resp., Ex. 7 ¶ 3.  Attorney Golger attached copies of the plea letters, the first of which he mailed to Hammond on April 2, 2013, and the second of which he mailed to Hammond on May 16, 2013.  See id. at ¶¶ 4–5.  In addition, Attorney Golger stated that, on May 21, 2013, he met with Hammond and discussed the government's plea offer, at which

time Hammond advised him that he would not accept the plea and wanted to proceed to trial. See id. at ¶ 5.

Attorney Brown, who began representing Hammond on May 29, 2013, and served as Hammond's trial and appellate counsel, swore in his Affidavit that, shortly after entering his appearance, the government approached him regarding a plea deal. See Gov't's Corrected Resp., Ex. 4 ¶ 2. Attorney Brown stated that, when he met with Hammond to discuss the plea offer, Hammond "refused to even discuss it and told me that he understood the statutory maximum and was willing to risk up to that amount of incarceration as he was innocent." Ex. 4 ¶ 3.

Even assuming that Hammond did not receive either of Attorney Golger's letters and that neither Attorney Golger nor Attorney Brown discussed the government's plea offer with him, Hammond's ineffective assistance of counsel claim fails because he has not shown that counsel's deficient performance prejudiced him. See Puglisi v. United States, 586 F.3d 209, 215 (2d Cir. 2009). A petitioner seeking a hearing on the basis that his counsel's ineffective assistance led to the expiration of a plea offer must "proffer arguably credible evidence of a prima facie case" that, but for counsel's failure to convey the plea offer, he would have accepted the offer. See Puglisi, 586 F.3d at 215. "This may be accomplished through the petitioner's own sworn statement if it is credible in light of all the relevant circumstances." Id. A petitioner's statement that he would have accepted a plea offer "is sufficiently credible to warrant a hearing where it is accompanied by some 'objective evidence,' such as a significant sentencing disparity." See id. at 216 (citing Pham, 317 F.3d at 182–83; U.S. v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)).

Here, not only has Hammond failed to provide the court with an affidavit stating that he would have accepted a plea offer, but he has not pointed to objective evidence supporting a credible claim of prejudice. Because Hammond was indicted on a one count Indictment without a lesser-included offense, any sentencing range in the unspecified plea offer Hammond refers to in his Petition could not have been significantly different from the range the court adopted at the sentencing hearing following Hammond's conviction at trial. <u>See</u> Hammond Criminal Docket, Indictment; PSR (Doc. No. 94) at 5–6. Indeed, the three point reduction for acceptance of responsibility was the only difference between the sentencing range in the plea agreements the government attached to its Corrected Response and the range from the PSR ultimately adopted by the court. <u>See</u> Gov't's Corrected Resp., Ex. 5 (Doc. No. 8-5) at 5; Ex. 6 (Doc. No. 8-6) at 5; PSR at 5–6. A disparity based solely on a standard reduction for acceptance of responsibility falls short of what courts have considered a "significant sentencing disparity." <u>See, e.g.</u>, <u>Pham</u>, 317 F.3d at 183 (reversing where district court did not consider a disparity between a plea offer of 78 to 97 months and a sentence after trial of 210 months). Here, the Plea Agreements counsel received had a stipulated Guidelines range of 77 to 96 months. Hammond was sentenced to 108 months' imprisonment.[5] <u>See</u> Hammond Criminal Docket, Judgment. Finally, Hammond's continued insistence that the DNA evidence tying him to the ammunition was fabricated weakens the credibility of his claim that he would have accepted a plea offer without the benefit of hindsight. <u>See</u> <u>U.S. v. Nunez-Polanco</u>, 20 F. Supp. 3d 473,

---

[5] He also received an 18-month sentence on a supervised release violation. <u>See</u> <u>U.S. v. Hammond</u>, 03-CR-331 (JCH), Order Revoking Supervised Release (Doc. No. 137).

481 (S.D.N.Y. 2014) (finding it "unlikely that [defendant] would have accepted the plea offer without the benefit of the pellucid hindsight that he enjoys now" given that defendant continuously maintained his innocence).

Thus, the court concludes that Hammond has not plausibly alleged that his attorneys were ineffective for failing to convey the government's plea offers to him.

G.    Ground Nine: Calculation of Criminal History

Hammond argues that his Guidelines range was calculated improperly because two convictions for which he received concurrent sentences should not have been counted as separate offenses under U.S.S.G. § 4A1.2(a)(2).  See Mot. to Amend at 1–2.  The government responds that the claim is procedurally barred, not properly the subject collateral review, and meritless.  See Gov't Corrected Resp. at 31.

"Insofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional. . . . absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal."  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996).  Hammond objected to the calculation of his criminal history score at his sentencing hearing.  See Hammond Criminal Docket, Sentencing Transcript ("Sentencing Tr.") at 5.  This court rejected Hammond's objection because his two prior offenses were separated by an intervening arrest.  See id. at 5–6.

Hammond did not challenge the court's Sentencing Guidelines calculation on direct appeal.  Moreover, having considered all of the factors under section 3553 of title 18 of the United States Code at the time of sentencing—of which the Guidelines are only one component—the court concludes that the sentencing proceedings did not

result in a miscarriage of justice.  See Reed v. United States, No. 3:16-cv-01356 (SRU)

2017 WL 5573151, at *7 (D. Conn. Nov. 20, 2017) (noting that the Guidelines are

advisory and that the sentencing court imposed a sentence within the statutory limits).

    H.    Ground Ten: Guidelines Calculation under 2K2.1

Hammond argues that his prior Connecticut state possession of drugs conviction

cannot be used to enhance his base offense level as a violent felony.  See Mot. to

Amend at 2.  The government responds that this claim is procedurally barred because

Guidelines determinations are not subject to collateral review and Hammond's sentence

was not a miscarriage of justice.  See Gov't Corrected Resp. at 32.

Under U.S.S.G. § 2K2.1(a)(2), Hammond received the base offense level of 24

for unlawfully possessing ammunition "subsequent to sustaining at least two felony

convictions of either a crime of violence or a controlled substance offense."  Hammond

has been convicted of several felonies, including a State of Connecticut conviction for

Sale of Narcotics and a federal conviction for possession of a firearm by a convicted

felon.  See Hammond Criminal Docket, PSR at 6–9.  The court concludes that, in view

of Hammond's possession of a loaded firearm while on supervised release and his

history of violent conduct, Hammond's sentence of 108 months on the conviction, and

an additional 19 months for the supervised release violation, was not a miscarriage of

justice.

    I.    Discovery Request

Hammond seeks discovery in support of his section 2255 Petition.  See Mot. to

Vacate at 24.  He requests an affidavit from trial and appellate counsel addressing each

ground raised in his Petition, any drafted plea agreements, a copy of Shawn Hill's

attorney's DNA expert's report, and a copy of Sergeant Armistead's DNA report.  <u>See</u> <u>id.</u>  The government responds that Hammond has not shown "good cause" for receiving discovery.  <u>See</u> Gov't's Corrected Resp. at 1 n.1.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997).  "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Rules Governing §2255 Proceedings, Rule 6(a).  "This 'good cause' standard is satisfied 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  <u>Ferranti v. United States</u>, 480 F. App'x 634, 638 (2d Cir. 2012) (quoting <u>Bracy</u>, 520 U.S. at 908–09).  Because the court concludes that Hammond has not raised allegations that, with factual development of his claims, could plausibly establish that he is entitled to relief, his request for discovery is denied.[6]

## V.  CONCLUSION

Hammond has failed to plead a plausible claim of ineffective assistance of counsel.  <u>See</u> <u>Puglisi</u>, 586 F.3d at 213.  In addition, there are no material facts in dispute: taking all of Hammond's factual assertions as true, Hammond's claims still fail.  <u>See</u> <u>Gonzalez</u>, 722 F.3d at 131.  For these reasons, the court exercises its discretion to **DENY** Hammond's request for a hearing.

---

[6] The government has submitted affidavits from both of Hammond's attorneys responding to claims in his Petition and copies of drafted plea agreements.  <u>See</u> Gov't's Corrected Resp., Exs. 4–10.

Furthermore, for the reasons articulated above, the court **DENIES** Hammond's Motion to Vacate, Correct or Set Aside Sentence (Doc. No. 1).

Finally, because the petitioner has not made a "substantial showing" of a denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of May, 2018.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge